LAURA E. DUFFY
United States Attorney

TOM STAHL, CBN 78291
Assistant United States Attorney
880 Front Street, Room 6293
San Diego, California 92101

LAUREN CASTALDI
ADAM R. SMART
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044-0683
Telephone:	(202) 514-9668
		(202) 307-6422
Facsimile:	(202) 307-0054
E-mail:		lauren.m.castaldi@usdoj.gov
		adam.r.smart@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEEDS, L.P., ) | Civil No. 08-cv-0100-BTM-BLM |
| Plaintiff, ) | |
| v. ) | UNITED STATES' TRIAL BRIEF |
| UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

## I. INTRODUCTION

The tax liabilities underlying the federal tax liens at issue in this case arose from notices of deficiency issued to Don and Susanne Ballantyne (the Ballantynes) for their 1985, 1986, 1990 and 1997 tax years for unpaid federal income taxes. On the dates of the assessments for these tax years and after notice and demand and failure to pay, statutory liens arose which attached to all property and rights to property of the Ballantynes, including the property described below. 26 U.S.C. § 6321. In anticipation of these liens the Ballantynes transferred certain real property in San Diego, located at 3207 McCall Street, San Diego, CA 92106 ("the McCall Property") to an entity, Leeds LP, they formed during the pendency of a Tax Court trial concerning the 1985 and 1986 tax liabilities which comprise the bulk of

the liabilities. As the nominee of the Ballantynes, they continued to control Leeds LP through the relevant dates in this case.

A Notice of Federal Tax Lien specifically identifying the nominee relationship at issue here was recorded against Plaintiff's property, as nominee of the taxpayers, including the McCall Property, in order to put third parties on notice that the liens against the Ballantynes attached to the McCall Property. On January 17, 2008, Plaintiff, the nominal record title holder, filed this action seeking to quiet title to the McCall Property, asking the Court to find the tax liens encumbering the Ballantynes' property do not encumber the McCall Property. The United States contends that the federal tax liens at issue did attach to the McCall Property, and remain attached thereto, and as such Plaintiff is not entitled to quiet title to the McCall Property.

## II.   ARGUMENT

### A.   Plaintiff is the Ballantynes' Nominee

"A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001). The nominee doctrine "stems from equitable principles." *Richards v. United States* (*In re Richards*), 231 B.R. 571, 578 (E.D. Pa. 1999). "Focusing on the relationship between the taxpayer and the property, the [nominee] theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *Id*. Whether a person or entity holds property as a nominee of a taxpayer "is determined by the degree to which a party exercises control over an entity and its assets." *See United States v. Bell*, 27 F. Supp. 2d 1191, 1195 (E.D. Cal. 1998) (citing *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 729 (11th Cir. 1989), and *LiButti v. United States*, 107 F.3d 110, 119-20 (2d Cir. 1997)). The burden is on the United States to prove by a preponderance of the evidence that Plaintiff is the Ballantynes' nominee. *See United States. v. Vaagen*, 2006 WL 2435029, 7 (E.D. Wash. 2006).

####    1.   Plaintiff Is the Ballantynes' Nominee under the Federal Nominee Factors

This Court has held that California recognizes that an entity may nominally hold title for another. See Docket entry # 89. Moreover, this Court has held that as California courts have not flushed out the exact contours for application of the nominee principle, this Court may look to the federal common law on nominees to supply the factors. *See* Docket entry # 89; *see also United States v. May*, 2007 WL

3287513, at *2, 100 A.F.T.R.2d 2007-6602 (11th Cir. Nov. 8, 2007) (per curiam) (slip copy) (citing *Battle v. United States*, 2007 WL 1424553, at *5 (E.D. Tex. Feb. 7, 2007); *Cody v. United States*, 348 F. Supp. 2d 682, 694 (E.D. Va. 2004); *Towe Antique Ford Found. v. I.R.S.*, 791 F. Supp. 1450, 1454 (D. Mont. 1992), *aff'd on other grounds*, 999 F.2d 1387 (9th Cir.1993); *Grippo v. Perazzo*, 357 F.3d 1218, 1222 (11th Cir. 2004)); *Scoville v. United States,* 250 F.3d 1198, 1202 (8th Cir. 2001); *United States v. Fields*, 2009 WL 605775, at *5, 103 A.F.T.R.2d 2009-1271 (S.D. Miss. Mar. 9, 2009). Whether a certain level of control over land or goods as established by state law "constitutes 'property' or 'rights to property' is a matter of federal law." *Drye v. United States*, 528 U.S. 49, 58 (1999) (quoting *United States  v. Nat'l Bank of Commerce*, 472 U.S. 713, 727 (1985)).

Factors considered by federal courts in a nominee determination include: "(a) No consideration or inadequate consideration paid by the nominee; (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) Close relationship between transferor and the nominee; (d) Failure to record conveyance; (e) Retention of possession by the transferor; and (f) Continued enjoyment by the transferor of benefits of the transferred property." *See Towe Antique Ford Foundation v. I.R.S.*, 791 F.Supp. 1450, 1454 (D. Mont. 1992), *aff'd on other grounds*, 999 F.2d 1387 (9th Cir.1993)); *see also May v. United States*, 2007 WL 3287513 (11th Cir. 2007). All of these factors apply to the present case. The Ballantynes transferred the McCall Property to a limited partnership, Leeds LP, which they controlled and which was owned exclusively by trusts for members of the Ballantyne family. The transfer occurred after taxes were assessed against the Ballantynes and approximately one month after the Ballantynes were in trial in the United states Tax Court challenging approximately $1 million in additional proposed deficiencies. Despite the transfer of the McCall Property, the Ballantynes continued to live in the McCall Property and enjoyed the use of the property. In addition, the transfer of the McCall Property was for no or inadequate consideration as the Ballantynes devised a series of transaction through which they purported to divest themselves of ownership of the McCall Property while avoiding receipt of financial compensation.

**2.    Plaintiff Is the Ballantynes' Nominee under State Law Factors**

This Court has also ruled that in addition to the proving its case pursuant to the federal nominee factors, the United States may also use state law theories to demonstrate th Ballantynes have an interest

in the McCall Property. *See* Docket entry # 89. Thus, even assuming for the sake of argument that California did not recognize the concept of nominee, as long as the United States can demonstrate that it has an interest in the McCall Property pursuant to California law, then this Court can still apply the nominee factors discussed above to determine whether Plaintiff is the Ballantynes' nominee. State law theories that would establish the United States' interest in the McCall Property include fraudulent transfer (discussed *infra* Section B.2) and alter ego.

**B.     Plaintiff Is Not A Subsequent Purchasers of the McCall Property**

**1.     26 U.S.C. § 6323 Does Not Protect Plaintiff If it Is the Ballantyne's Nominee**

By definition if Plaintiff is found to be the Ballantyne's nominee, it cannot be a "purchaser" of the McCall Property as contemplated by 26 U.S.C. § 6323(a). Pursuant to section 6323(h)(6) states in part, a "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property. . ." The United States' claim that Plaintiff is a nominee seeks to dispose of any pretense that Plaintiff and the Ballantynes are separate and distinct and that there was any exchange for value of the McCall Property. As one Court stated:

> Focusing on the relationship between the taxpayer and the property, the [nominee] theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner. Said another way, the nominee theory is utilized to determine whether property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property.

*In re Richards*, 231 B.R. 571, 578 (E.D. Pa. 1999). As this Court has previously recognized, a party who is a nominee cannot be a purchaser as the taxpayer has not relinquished their ownership interest. *See* Docket entry # 89. Thus, because, as explained above, Plaintiff is the nominee of the Ballantynes, Plaintiff cannot be a purchaser of the McCall Property under 26 U.S.C. § 6323(a).

**2.     Even If Plaintiff Is Not the Ballantynes' Nominee, it Is Not a Purchaser under 26 U.S.C. § 6323**

Pursuant to section 6323(h)(6), a "purchaser", in addition to providing adequate consideration for property (which Leeds failed to do), must acquire an interest in property that is valid under local law. If property is acquired due to a fraudulent transfer, then it is not a valid transfer under California law. The inquiry pursuant to the California Uniform Fraudulent Transfer Act ("CUFTA") §§ 3439 *et seq.*, is

whether a transfer of an asset or interest by the debtor to a third person undertaken with the intent to prevent a creditor from reaching the transferred interest to satisfy its claim.

> A transfer is fraudulent, both as to present and future creditors, when it is made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Even absent actual fraudulent intent, a transfer may be deemed fraudulent if the debtor did not receive "a reasonably equivalent value in exchange for the transfer" and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

*Shafrir v. Nicherie*, 2008 WL 1735519, at *3 (Cal. Ct. App. 2008) (quoting *Mejia v. Reed,* 74 P.3d 166, 170 (Cal. 2003)); *see also* CUFTA §§ 3439.04 - 3439.05.

Under the CUFTA, a creditor of the transferor may avoid a transfer if it was a result of the fraud of the transferor. The CUFTA provides several remedies to a wronged creditor, including avoidance of the transfer, attachment against other assets of the fraudulent transferee, and any other relief that the circumstances may require. CUFTA § 3439.07. In sum, establishing a fraudulent transfer under the CUFTA requires the showing of: (1) creditor status, (2) a property transfer, and (3) actual or constructive fraud on the part of the transferor.

The Ballantynes fraudulently transferred the McCall Property to Plaintiff. The IRS was a creditor of the Ballantynes when the McCall Property was transferred. Moreover, the IRS stood to increase the amount of the assessed liabilities significantly at the time of the transfer. In addition there was both actual and constructive fraud. The Ballantynes intended to defraud the IRS as they did not want to have to pay their tax liabilities. Furthermore, there was constructive fraud because, as discussed above in Section A.1, the Ballantynes transferred the McCall Property for little or no consideration, and as a result of the series of transfers of property engaged in by the Ballantynes, including that of the McCall Property and the other significant assets they owned, they endeavored to render themselves insolvent.

Because the Ballantynes' transfer of the McCall Property was done with "actual intent to hinder, delay, or defraud" the IRS, and the transfer was made for little or no consideration in a manner that rendered the Ballantynes insolvent, the transfer was fraudulent under either prong of the CUFTA. Thus, because the transfer is not valid under local law, Plaintiff cannot be a purchaser of the McCall Property under 26 U.S.C. § 6323 and is not entitled to the statute's protections. *See Sumpter v. United States*, 314 F. Supp. 2d 684, 686 (E.D. Mich. 2004).

## CONCLUSION

The law and evidence at trial will establish that the United States' liens attached to the McCall Property because at all relevant times Plaintiff held the property as a nominee of Ballantynes. Moreover, because the transfer of the property was fraudulent under the CUFTA, Plaintiff is not entitled to the protections under 26 U.S.C. § 6323, and cannot therefor quiet title in the McCall Property to the exclusion of the IRS liens.

DATED this 6th day of December, 2010.

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

TOM STAHL
Assistant United States Attorney

/s/ Lauren Castaldi
LAUREN CASTALDI
ADAM R. SMART
Trial Attorneys, Tax Division
United States Department of Justice

Attorneys for the United States

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of December, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: Edward C Walton. ewalton@kayerose.com; Andre M Picciurro apicciurro@kayerose.com.

       /s/ Lauren Castaldi
LAUREN CASTALDI
Trial Attorney, Tax Division
U.S. Department of Justice